# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| LINDA F. PETE | : | DOCKET NO. 08-0774 |
| --- | --- | --- |
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff to this action, Linda F. Pete, initially filed an application for supplemental security income on September 23, 2004, claiming disability due to back surgery, arthritis, and depression beginning September 23, 2004. Transcript at 15, 17. Plaintiff's claim was denied, and plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* at 15. On June 19, 2007, a hearing was held. *Id.* at 287-326. At the hearing, plaintiff, represented by a non-attorney representative, testified, along with a vocational expert. *Id.* at 289, 293-326. The ALJ issued a written decision sometime after June 19, 2007[1] finding plaintiff not disabled within the meaning of the Social Security Act. *Id.* at 15, 23.

---

[1] Due to a typographical error, the stamp date of the ALJ's decision was marked as June 16, 2007, which is three days before the hearing date of June 19, 2007. It is unclear from the record when the ALJ's decision was actually issued. The Appeals Council made part of the record plaintiff's counsel's letter concerning said error and held that, though claimant did not file her request for review on time, there was a good reason for the delay. *Id.* at 3-4, 10.

On August 29, 2007, plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 10-11. The Appeals Council denied plaintiff's request for review. *Id.* at 4-6.

Pursuant to 42 U.S.C. § 405(g), plaintiff requested that this court review the decision of the Commissioner to determine if it complies with applicable law and is supported by substantial evidence. This court finds that it is.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38

F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1421, 28 L. Ed. 2d 842 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

The burden of proving that he or she suffers from a disability[2] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working);
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1;
> (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and
> (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

---

[2] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Once the claimant has made an appeal, the Appeals Council may decide to grant review, deny review, or dismiss the appeal. "[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision." *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

Here, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act from September 23, 2004 through the date of the decision. Transcript at 15, 23. Specifically, the ALJ found that 1) plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; 2) plaintiff's severe impairments included status post back surgery, arthritis, and a depressive disorder; and 3) plaintiff's impairments do not meet or exceed any listed impairment. Transcript at 17-18. The ALJ concluded that plaintiff's RFC allows her to "perform light work" and

> sit for 6 hours in an 8 hour day. She can stand and walk for 2 hours in an 8 hour day. She can lift and carry 10 pounds frequently and 20 pounds occasionally. She can occasionally climb ramps and stairs. She is restricted from climbing ropes,

> ladders, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can frequently but not constantly handle and finger with the left upper extremity. She is restricted from work at unprotected heights or around dangerous moving machinery. Regarding her mental limitations, she can have limited contact with the public. She can do simple one to three step procedures that are routine and repetitive, without frequent changes in duties.

Transcript at 19.

Based on the assigned RFC, the ALJ determined, with the aid of a vocational expert, that plaintiff could not perform her past relevant work, and so went on to step five of the determination. *Id.* at 22. Again enlisting the aid of the vocational expert, the ALJ found that plaintiff could perform the requirements of representative light unskilled occupations such as office helper, cubicle cashier, storage facility rental clerk, ticket seller, or companion for which a significant number of jobs exist in the region and throughout the U.S. *Id.* at 22-23.

In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 461. Before this court, plaintiff argues that the Commissioner's determination is not supported by substantial evidence because:

> 1. The [vocational expert] testimony, upon which the ALJ's decision is based, is facially unreliable as the reasoning skills and temperament factors required by the jobs recommended by the [vocational expert] exceed the limitations contained in the ALJ's hypothetical questions and in the RFC.
>
> 2. The ALJ failed to elicit a reasonable explanation for the inconsistency between the [vocational expert] testimony and [the information contained in] the [Dictionary of Occupational Titles (D.O.T.)] pursuant to Soc. Sec. R. 00-4p.

Doc. 16, at 5.

Plaintiff argues that the two assigned errors are "closely intertwined" and so argues them together. Specifically, she argues there is an actual conflict between the vocational testimony and the D.O.T. because the jobs elicited in response to the ALJ's adopted hypothetical allegedly have reasoning and temperament demands greater than plaintiff's RFC allows.

The ALJ's adopted hypothetical, which incorporates plaintiff's RFC, asked the vocational expert to assume mental limitations allowing plaintiff limited contact with the public and the ability to perform simple one to three step procedures that are routine and repetitive without frequent changes in duties. Transcript at 320. Plaintiff argues that according to the D.O.T. the reasoning levels for the jobs elicited, office helper, cubicle cashier, storage facility rental clerk, ticket seller, or companion, range from two to three, which are outside of plaintiff's limitation to "simple one to three step procedures." Doc. 16, at 7-8. Plaintiff argues that her RFC limits her to jobs requiring only level-one reasoning.

Additionally, plaintiff argues that according to the D.O.T. and its companion publication, *Selected Characteristics of Occupations* (S.C.O.), the temperament factor of "V", which is assigned to the jobs of office helper, storage facility rental clerk, and companion, requires "an individual to perform a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure." *Id.* at 9. Plaintiff argues that this temperament factor is outside of plaintiff's RFC limitation to work "without frequent changes in duties." Plaintiff also alleges that, according to the D.O.T. and S.C.O., the jobs of cubicle cashier, storage facility rental clerk, ticket seller, and companion have a temperament factor of "P", which requires an individual to deal with people beyond giving and receiving instructions. Thus, plaintiff argues that this temperament factor conflicts with her RFC restriction to jobs with "limited contact with the public."

6

In support, plaintiff relies on the Eighth Circuit case, *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997). In *Lucy*, an ALJ determined that plaintiff had borderline intellectual functioning. 113 F.3d at 907. However, the ALJ concluded that this limitation did not substantially limit plaintiff's ability to perform the full range of sedentary work. *Id.* Accordingly, the ALJ relied on the Medical-Vocational Guidelines to find plaintiff not disabled.[3] *Id.*

The Eighth Circuit held that it was error for the ALJ to rely on the Medical-Vocational Guidelines because plaintiff's borderline intellectual functioning is "a significant nonexertional impairment that must be considered by a vocational expert." *Id.* at 908. The court continued:

> the Social Security's own list of unskilled sedentary jobs . . . indicates that many jobs within this range require more than the mental capacity to follow simple instructions. . . . Many of the jobs listed require level two reasoning or higher in the unskilled sedentary job category. Thus, contrary to the ALJ's conclusion, it appears that Lucy's borderline intellectual functioning does have an impact on his capacity to perform the full range of sedentary work.

*Lucy* is inapposite to the facts of the instant case. Here, the ALJ specifically noted that plaintiff's ability to perform all or substantially all of the requirements of unskilled light work is impeded by the limitations assigned to her in her RFC. Transcript at 22. Thus, rather than relying on the Medical-Vocational Guidelines, "[t]o determine the extent to which [plaintiff's] limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id*.

---

[3] Appendix 2, §200.00(b) of Title 20, Part 404, Subpart P of the Code of Federal Regulations explains:
> The existence of jobs in the national economy is reflected in the "Decisions" shown in the rules [set out in Appendix 2] . . . . [W]hen all factors coincide with the criteria of a rule, the existence of such jobs is established. However, the existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded.

Further, any existing conflict is certainly not a facial conflict. The D.O.T. does not specifically preclude someone with plaintiff's mental RFC from performing the identified jobs. Rather, four of the five jobs identified by the vocational expert are defined as "unskilled work,"[4] i.e. "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568, 416.968. At a level two reasoning development, plaintiff would need to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to d]eal with problems involving a few concrete variables in or from standardized situations." D.O.T. Appendix C. Reasoning level three requires the employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Contrary to plaintiff's argument, the fact that instructions may be various, furnished in multiple forms, or detailed, does not preclude them from being simple. Instead, the classification of these jobs as "unskilled" indicates that they are by definition simple.

At a level one reasoning development, plaintiff would be limited to the ability to "[a]pply commonsense understanding to carry out simple *one- or two-step instructions* [and to d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* (emphasis added). Plaintiff's RFC does not specifically limit the simplicity of

---

[4] Jobs having a specific vocational preparation (SVP) of 1 to 2 are defined as "unskilled work." Social Security Ruling 00-4p (citing 20 C.F.R. §§ 404.1568, 416.968). Four of the five jobs cited in the ALJ decision, office helper (D.O.T. 239.567-010), cubicle cashier (211.462-010), storage facility rental clerk (295.367-026), and ticket seller (211.467-030) all have SVPs of 2. The job of companion (309.677-010) has a SVP of 3, and thus, is defined as "semi-skilled work." However, at the hearing, the vocational expert explained to the ALJ that the companion job he recommends is not the same as that listed in the D.O.T., stating that, while companion is listed in the D.O.T. "at a semi-skilled level", the "companion in the D.O.T. [is] a [s]ocial [c]ompanion . . . [and more like a] lump social secretary." Transcript at 325. Rather, the vocational expert testified that the companion job he suggests is not listed in the D.O.T. and is "actually a sitter for the elderly and . . . [should be considered as] sedentary work." *Id.* at 323-325. Thus, the companion job suggested by the vocational expert is a different job than that listed in the D.O.T. and does not entail the same responsibilities nor require the same extensive level of preparation.

8

instructions which she may understand to "one- or two-step instructions." Instead, plaintiff "can have limited contact with the public [and] . . . do simple one to three step procedures that are routine and repetitive, without frequent changes in duties." Transcript at 19. While this language is somewhat similar to an individual's limitation under a level one reasoning development, plaintiff's RFC allows her to do three-step procedures that are beyond the ability of a party with level one reasoning development.

With regard to plaintiff's argument that the temperament factors required in the D.O.T. and S.C.O. for the jobs recommended by the vocational expert exceed the limitations contained in the ALJ's hypothetical questions and in the RFC, "[t]he D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Social Security Ruling 00-4p. The Eighth Circuit stated in *Hall v. Chater* that

> [plaintiff's] reliance on the D.O.T. as a definitive authority on job requirements is misplaced . . . for D.O.T. definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range. The D.O.T. itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words, not all the jobs in every category have requirements identical to or as rigorous as those listed in the D.O.T.

109 F.3d 1255, 1259 (5th Cir. 1997). Thus, the temperament factor levels listed in the D.O.T. and S.C.O. are maximum requirements for each recommended job, rather than the range of requirements that plaintiff must meet to perform the jobs. As stated in *Hall*, not every job recommended by the vocational expert will actually "have requirements identical to or as rigorous as those listed in the D.O.T." *Id.* Thus, the vocational expert was reasonable when he stated that plaintiff could perform the identified positions based upon the ALJ's hypothetical

9

question that included restrictions for "limited contact with the public [and] . . . [non]frequent changes in duties," despite certain identified positions having temperament factors of "V" or "P". Transcript at 19. Therefore, no facial conflict between the D.O.T. and the vocational expert's testimony exists.

Finally, even were this court to find that an inferential conflict between the vocational expert's testimony and the D.O.T. exists, the Fifth Circuit Court of Appeal decision in *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000) instructs that the court may not substitute its judgment for the ALJ's. "When, as here, the claimant suffers from additional limitations that make the Medical-Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence. This [c]ourt has recognized that the D.O.T. is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Id.* (internal citations omitted). The appeal court quoted *Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986), noting "*The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.*" *Id.* (emphasis added).

The court found that any conflict that could be inferred was "greatly mitigated by the vocational expert's specific testimony that [plaintiff] could perform the identified jobs" despite his impairments and noted that to the extent that plaintiff contended that the vocational expert's testimony should have been explored further, plaintiff himself "failed to do so in the administrative hearing." *Id.*

As in *Carey*, plaintiff has failed to identify a facial conflict between her RFC and the jobs identified by the vocational expert adopted in the ALJ's hearing decision. The ALJ included all of the limitations associated with plaintiff's RFC in the adopted hypothetical, and the vocational

expert then identified the cited jobs. Transcript at 19, 22-23, 320-24. The vocational expert specifically affirmed that his testimony as to those jobs (other than the companion job not listed in the D.O.T.)[5] was consistent with the job standards and descriptions found in the current D.O.T. *Id.* at 323-24. Moreover, the vocational expert affirmed that he is "familiar with the Commissioner's Regulations defining the terms sedentary, light, medium, and heavy work as well as unskilled, semi-skilled and skilled work[.]" *Id.* at 319. Finally, plaintiff's representative had the opportunity to specifically question the vocational expert about the alleged conflicts between his testimony and the D.O.T. *Id.* at 324-25. She failed to do so. *Id.* Thus, substantial evidence supports the ALJ's determination.

## IV.

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

---

[5] See footnote 4.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on this 30th day of September, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE